**COMP**
VINCENT J. AIELLO, ESQ.
Nevada Bar No. 007970
LISA J. ZASTROW, ESQ.
Nevada Bar No. 009727
**KOLESAR & LEATHAM**
400 S. Rampart Blvd., Ste. 400
Las Vegas, Nevada 89145
Telephone: (702) 362-7800
Facsimile: (702) 362-9472
E-Mail: vaiello@klnevada.com
lzastrow@klnevada.com

Attorneys for Plaintiff
JAMES EDWARDS

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JAMES EDWARDS,<br><br>Plaintiff,<br><br>vs.<br><br>ROCKWAY PRECAST, INC., a/k/a JENSEN PRECAST, DOE Defendants I though X, inclusive; and ROE CORPORATIONS A through Z, inclusive,<br><br>Defendants. | CASE NO.<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

This is a civil action seeking monetary relief for violations of federal civil rights laws and state law claims. In support of this Complaint, Plaintiff hereby alleges the following:

**JURISDICTION, VENUE, AND LEGAL BASIS**

1. This Court possesses jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise from Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.* and the Civil Rights Act of 1991, 42 U.S.C. 1981 *et. seq.* Additionally, the Court has supplemental jurisdiction over Plaintiff's state law tort claims pursuant to 28 U.S.C. § 1367 because the claims are substantially related to Plaintiff's federal claims.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 since "a substantial part of the events or omissions giving rise to the claim[s] occurred" in Nevada.

3. This civil action is brought by Plaintiff Pursuant to federal common and statutory law and state common law.

4. Plaintiff, JAMES EDWARDS in an adult individual currently residing in Clark County, Nevada. Plaintiff is an African American male.

5. Defendant, ROCKWAY PRECAST, INC., a/k/a JENSEN PRECAST ("Rockway") is a corporation registered duly formed and existing under the laws of the State of Nevada and authorized to conduct business in Clark County, Nevada. Defendant operates a precast concrete products manufacturing and distribution company.

6. The true names and capacities, whether individual, corporate, associate, or otherwise, of DOE Defendants I through X and ROE CORPORATIONS A through Z are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants designated as DOE Defendants and ROE CORPORATIONS are responsible in some manner for the events and occurrences referenced in this Complaint, and/or owes money to Plaintiff and/or may be affiliated with one of the other Defendants or may claim some interest in the subject matter of this Complaint. Plaintiff will ask leave of the Court to amend this Complaint and insert the true names and capacities of DOE Defendants I through X and ROE CORPORATIONS A through Z when the identities of the same have been ascertained, and to join said Defendants in this action.

7. Defendant has more than fifteen (15) employees and is thus subject to federal anti-discrimination laws. 42 U.S.C. § 2000e(b). As an entity operating and transacting business in Nevada, Defendant is also subject to the common and statutory laws of Nevada. Defendant is being sued herein for monetary damages.

8. The true names of Defendants DOES I to X and ROE CORPORATIONS I to X, inclusive, are unknown to Plaintiff at this time and, therefore, Plaintiff brings suit against those individuals and entities by the foregoing fictitious names. Plaintiff alleges said Defendants are liable to Plaintiff under the claims for relief set forth below. Plaintiff requests when the true names of the DOE and ROE CORPORATION Defendants are known, this Complaint may be amended by inserting their true names in lieu of the fictitious names together with apt and proper

words to charge them.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Plaintiff filed a formal charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on or about June 16, 2014. Plaintiff's EEOC filing fulfilled his obligation to initiate an administrative claim before seeking relief in this Court.

10. In the EEOC filing, Plaintiff alleged facts demonstrating he had been subjected to illegal employment discrimination and harassment based on his race and perceived sexual orientation. Additionally, Plaintiff alleged facts indicative of retaliation for bringing to light the discrimination and harassment he endured in the workplace.

11. After investigating the matter, the EEOC provided Plaintiff with a "Notice Suit Rights" dated October 27, 2015. The EEOC's letter notified Plaintiff any litigation must be filed within ninety (90) days of his receipt of the EEOC's Notice of Suit Rights.

12. Plaintiff timely files this Complaint within the 90-day requirement.

## FACTUAL BACKGROUND

13. Plaintiff was hired by Rockway on August 14, 2011 for employment as a cement worker. Plaintiff previously worked for Rockway from approximately 2001 to 2005. During both periods of employment, Plaintiff maintained a clean work record with no verbal or written disciplinary warnings.

14. Plaintiff's supervisors were Martin (last name unknown) (Hispanic Male), Mack (last name unknown) (Race unknown), and Jeremiah (last name unknown) (race unknown). Plaintiff's Plant Manager was Brian (last name unknown) (Caucasian Male). Brian was in charge of supervising all personnel and, as supervisor, was responsible for protecting employees from discrimination and/or harassment causing a hostile work environment.

15. Starting approximately on February 13, 2014, Plaintiff's coworker Cameron (last name unknown) (Caucasian Male), the son of the former plant manager, began placing a cement penis on Plaintiff's work space daily. When Plaintiff informed his managers Brian, Martin and Mack of Cameron's explicit sexual harassment and showed them the cement penis, they laughed

at Plaintiff's complaints and dismissed him without addressing Cameron's reprehensible workplace conduct.

16. After this incident, and without any formal disciplinary action by management, Plaintiff continued to endure the systematic, emotionally challenging harassment from his coworkers on a near daily basis. For instance, Plaintiff suffered repeated verbal harassment from a supervisor, Jeremiah, who repeatedly insinuated Plaintiff was homosexual.

17. Defendant was fully aware of the harassment.

18. Still, this pervasive degradation continued despite Plaintiff's attempts to notify management of his constant sexual and racial harassment. Cameron and another coworker, Joel Rieno (Race unknown), persistently bullied Plaintiff for listening to PBS Radio and baroque music such as Bach and Handel. They stated on multiple occasions that Plaintiff "must be gay" because "black men don't listen to that".

19. While Plaintiff suffered a constant barrage of sexual and racially charged harassment from managers and coworkers, the depth of his harassment was not limited to verbal hostility. Plaintiff's coworker Darian (last name unknown) (Race unknown), was physically abusive towards Plaintiff and other coworkers. Darian would "knee butt" (an act wherein one forcefully slams their knee into the buttocks of another) Plaintiff while Cameron, Mack, and Joel would laugh at Plaintiff's misfortune.

20. After nine months of complaining of severe physical, sexual and racial harassment resulting in a hostile workplace, Rockway retaliated against Plaintiff by terminating his employment on April 25, 2014. While Rockway alleged that Plaintiff had a "No call, No show"[1] on April 24, 2014 requiring immediate termination, Plaintiff asserts he called into work on April 23, 2014 and April 24, 2014 and spoke with his supervisor Mack regarding his necessary absence from work. Plaintiff explained to Mack that he had to gain custody of his daughter from his ex-girlfriend and enroll her in school. Despite following protocol Plaintiff was

---

[1] Ironically, allegedly failing to show for work or call in to explain an absence is violative of Rockway's employment policy wherein discrimination and harassment are acceptable actions by both employees and management.

informed on April 25, 2014 by Greg Taylor, a manager at Rockway, he was terminated for failing to call or show up for work on April 24, 2014.

21. As a final farewell, Plaintiff encountered perhaps the most heinous harassment by his coworker, Cameron. On the morning of April 25, 2014 Plaintiff noticed his work helmet was spray painted with the words "RIP You Black Nigger". Not only is this conduct inexcusable, but it indicates Plaintiff's coworker was informed of Plaintiff's impending termination. Clearly Cameron, as the son of the former plant manager, had a close relationship to management that explains why his hostile conduct was never reproached by management despite Plaintiff's frequent complaints.

## FIRST CAUSE OF ACTION

### *Race Discrimination Based Upon Hostile Work Environment*

22. Plaintiff repeats and reaffirms the allegations set forth and incorporates the same by reference as though set forth herein.

23. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*, prohibits employers with fifteen (15) or more employees from discriminating against any individual employee with respect to his or her compensation, terms, conditions or privileges of employment due the employee's race, color, religion, sex or national origin. To prevail on a hostile workplace claim premised upon "race", a plaintiff must show (1) that he/she was subjected to verbal or physical conduct of a racial nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment.

24. In this case, Defendant, by and through the actions of Martin, Mack, Jeremiah, Brian, Cameron and Joel subjected Plaintiff to a hostile and discriminatory work environment based upon his race/ethnicity ("African American") that culminated with his retaliatory termination. Plaintiff was the victim of repeated racial harassment from his coworkers in a manner which was deeply offensive and based solely upon his racial background. For instance, Plaintiff was constantly mocked by Cameron and Joel for listening to PBS Radio and baroque music such as Bach and Handel because "black men don't listen to that". Then, on Plaintiff's last

day of employment with Rockway, Cameron spray painted Plaintiff's helmet with the words "RIP You Black Nigger".

25. This unwelcome, pervasive harassment altered the working conditions of Plaintiff's employment culminating in a highly abusive working environment. When Plaintiff complained, Martin, Mack and Brian ignored his pleas and eventually terminated Plaintiff in a protective act of retaliation.

26. The foregoing conduct constitutes illegal racial discrimination prohibited by 42 U.S.C. § 2000e *et. seq.*

## SECOND CAUSE OF ACTION

*Sex Discrimination Based Upon Hostile Work Environment*

27. Plaintiff repeats and reaffirms the allegations set forth and incorporates the same by reference as though set forth herein.

28. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*, prohibits employers with fifteen (15) or more employees from discriminating against any individual employee with respect to his or her compensation, terms, conditions or privileges of employment due the employee's race, color, religion, sex or national origin. To prevail on a hostile workplace claim premised upon "sex/gender", a plaintiff must show (1) that he/she was subjected to verbal or physical conduct of a sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment.

29. In this case, Defendant, by and through the actions of Martin, Mack, Jeremiah, Brian, Cameron, and Darian subjected Plaintiff to a hostile and discriminatory work environment based upon his sex/gender that culminated with his retaliatory termination. Plaintiff was the victim of repeated verbal and physical sexual harassment from his managers and coworkers in a manner which was deeply offensive and based solely upon his perceived sexual orientation. The harassment began with Cameron using workplace equipment to create a cement penis and place said penis on Plaintiff's work station. Further, Jeremiah, a supervisor at Rockway, would insinuate that Plaintiff was homosexual on a recurring basis. Additionally, Plaintiff was regularly

told he "must be gay" by Cameron and Joel for listening to PBS Radio and baroque music such as Bach and Handel. As if the verbal abuse was not enough, Plaintiff suffered physical sexual harassment from Darian who would forcefully smash his knee into Plaintiff's buttocks. The frequent sexual harassment altered the working conditions of Plaintiff's employment culminating in a highly abusive working environment.

30. The foregoing conduct constitutes illegal sexual harassment prohibited by 42 U.S.C. § 2000e *et. seq.*

### THIRD CAUSE OF ACTION

*Retaliation*

31. Plaintiff repeats and reaffirms the allegations set forth and incorporates the same by reference as though set forth herein.

32. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*, prohibits employers with fifteen (15) or more employees from retaliating against any individual employee for either (1) having opposed any practice made an unlawful employment practice under federal anti-discrimination laws or (2) because he/she made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under federal anti-discrimination laws. To prove retaliation, a plaintiff must show (1) that he/she was engaged in a protected activity, such as opposing discrimination or participating in an investigation in discrimination; (2) that he/she was thereafter subjected to an adverse employment action; and (3) that there is a causal link between the protected activity and the adverse employment action.

33. In this case, Defendant, by and through its management employees subjected Plaintiff to a hostile and discriminatory working environment based on his race and sex. Plaintiff engaged in protected activity by opposing the unwanted harassment and reporting the conduct to management. After complaining several times, management failed to discipline the offending employees or alter Plaintiff's work conditions resulting in continued and escalating harassment.

34. Rockway's handling of Plaintiff's complaints and subsequent termination reeks of ineptitude and irony. The fact that Plaintiff was terminated for an alleged "No call, No show" policy while he suffered repeated illegal racial and sexual harassment is preposterous. Clearly,

management's close personal relationship with one of the primary offenders, Cameron, is the causal link between Plaintiff's protected conduct and his subsequent wrongful termination.

35. The foregoing conduct constituted illegal retaliation prohibited by 42 U.S.C. § 2000e *et. seq.*

### FOURTH CAUSE OF ACTION

*Race Discrimination under § 1981*

36. Plaintiff repeats and reaffirms the allegations set forth and incorporates the same by reference as though set forth herein.

37. The Civil Rights Act of 1991, 42 U.S.C. § 1981 ("Section 1981") prohibits race discrimination in the making and enforcing of contracts. *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 295 (1976). The clause "to make and enforce contracts" includes "the making, performance, modification and *termination* of contracts." 42 U.S.C. § 1981(b) (emphasis added). To succeed in bringing a Section 1981 claim plaintiff must prove by a preponderance of the evidence (1) that the plaintiff's employment contract was terminated; and (2) the plaintiff's race was a motivating factor in the defendant's decision. In showing that race was a motivating factor a plaintiff is not required to prove race was the sole motivation or even the primary motivation for the defendant's action. *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 853-59 (9th Cir. 2002) (en banc), *aff'd*, 539 U.S. 90 (2003). Plaintiff need only prove that race played a motivating part in the decision even though other factors may have also motivated the defendant.

38. In this case, there is no question that Plaintiff was terminated from his employment. Despite Plaintiff's desperate attempts to inform management of his continued racial harassment, Rockway did not attempt to adhere to federal anti-discriminatory laws or follow any policies and procedures that may be in place. Yet, when allegedly faced with a violation of company policy regarding a "No call, No show" by an employee with an otherwise pristine employment record, Rockway terminated Plaintiff without hesitation. This clear disparate treatment shows the sole reason for Plaintiff's termination arose out of the hatred and inherent bias towards Plaintiff because of his race.

39. Wherefore, Plaintiff demands judgment against Defendant for compensatory and punitive damages, as well as any other equitable remedies deemed just and equitable, in an amount to be adduced at trial by jury in this matter. Further, Plaintiff demands compensation for the costs of this action, including attorneys' fees and such other relief deemed just and equitable.

## FIFTH CAUSE OF ACTION

### *Intentional Infliction of Emotional Distress*

40. Plaintiff repeats and reaffirms the allegations set forth and incorporates the same by reference as though set forth herein.

41. Nevada common law recognizes the tort of "intentional infliction of emotional distress." To prevail on such a claim, a plaintiff must show: (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress; (2) plaintiff's having suffered severe or extreme emotional distress; and (3) actual or proximate causation between the extreme and outrageous conduct and the emotional distress suffered by the plaintiff. *Star v. Rabello*, 97 Nev. 124, 125, 625 P.2d 90, 92 (1981).

42. In this case, the actions of Plaintiff's managers and coworkers were extreme and outrageous including, but not limited to, a cement penis, physical sexual harassment, and the use of the words "RIP you Black Nigger". This intentional, humiliating conduct caused Plaintiff severe emotional distress. Specifically, Plaintiff was admitted to University Medical Care ("UMC") on April 26, 2014. Plaintiff's discharge instructions indicated he was suffering from bronchitis and a hernia. Rockway's employees' conduct was both the actual and proximate cause of Plaintiff's emotional distress.

43. Wherefore, Plaintiff demands judgment against Defendant for damages in an amount to be adduced at trial by jury in this matter. Further, Plaintiff demands compensation for the costs of this action, including attorneys' fees and such other relief deemed just and equitable.

/././/
/././/
/././/
/././/

## DEMAND FOR JURY TRIAL

44. Pursuant to the Seventh Amendment of the United States Constitution, Plaintiff invokes his right to trial by jury in this civil action.

## RELIEF REQUESTED

45. Wherefore, in light of the foregoing Complaint, Plaintiff requests the Court order the following relief in this matter:

   a. Set this matter for <u>trial by jury</u> on a date certain;

   b. Award Plaintiff general and compensatory damages in an amount not less than $500,000;

   c. Award Plaintiff exemplary and punitive damages against Defendant, to the extent permitted by law, in order to deter future conduct;

   d. Award pre-judgment and post-judgment interest, as provided by law;

   e. Award Plaintiff costs and reasonable attorneys' fees; and

   f. For such other and further relief as the Court deems just and proper.

DATED this 9 day of December, 2015.

KOLESAR & LEATHAM

By: /s/ Vincent J. Aiello
VINCENT J. AIELLO, ESQ.
Nevada Bar No. 007970
LISA J. ZASTROW, ESQ.
Nevada Bar No. 009727
400 S. Rampart Blvd., Ste. 400
Las Vegas, Nevada 89145

Attorneys for Plaintiff
JAMES EDWARDS